UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JON MESSER,<br><br>      Plaintiff,<br><br>v.<br><br>SPENCER SWADISH, et al.,<br><br>      Defendants. | Case No. 24-cv-11743<br><br>Honorable Robert J. White |

**OPINION AND ORDER DENYING THE HEALTHCARE DEFENDANTS' MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT**

I.   Introduction

Jon Messer commenced this 42 U.S.C. § 1983 action against, among others, Advanced Correctional Healthcare, Inc., nurses Julie Battista, Lindsey Beadle, Trina Barnett, and Jennifer Read, and Dr. Darryl Parker (the "Healthcare Defendants" collectively).  The amended complaint alleges that the individual Healthcare Defendants exhibited deliberate indifference to Messer's infected foot wound during his detention at the Livingston County jail.  Messer also asserts that Advanced Correctional Health is subject to municipal liability under section 1983 because it failed to properly train and supervise the individual Healthcare Defendants.

Before the Court is the Healthcare Defendants' motion to dismiss the claims asserted against them in the amended complaint. (ECF No. 18). Messer responded in opposition. (ECF No. 24). The Healthcare Defendants filed a reply. (ECF No. 25). The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the motion is denied.

II.     Background

   A.     *Factual History*

On July 12, 2021, Milford Township police officers arrested Messer on an outstanding felony warrant after conducting a traffic stop. (ECF No. 6, PageID.137-38, ¶¶ 33-35, 41). The officers transferred him to the custody of a Livingston County deputy sheriff who transported Messer to the County jail that same day. (*Id.*, PageID.140-41, ¶¶ 49-53). Jail intake notes show that Messer reported suffering from diabetes and that his foot was injured. (*Id.*, PageID.141, ¶ 55). He had an open wound on his left foot that was discolored, oozing fluid, and emitting a foul odor. (*Id.*, PageID.143, ¶¶ 64-67). A jail nurse packed and bandaged the wound. She did not provide Messer with antibiotics or pain medication. (*Id.*, PageID.143-44, ¶¶ 63, 75).

Jail nursing staff observed Messer's condition worsen over the next three days but ignored his pleas for emergency medical attention. (*Id.*, PageID.143-44, ¶¶ 68, 72). The jail's attending physician, Dr. Parker, only first visited Messer and

evaluated his foot wound on July 16 – four days into Messer's incarceration. (*Id.*, PageID.145, ¶ 81). He immediately ordered deputy sheriffs to transport Messer to a hospital for emergency treatment because of the severity of the infection. (*Id.*). Hospital physicians ultimately diagnosed Messer with osteomyelitis and amputated all the remaining toes on his left foot.[1] (*Id.*, PageID.146, ¶¶ 82-84, 87). Upon discharge from the hospital and his return to the County jail, nursing staff never provided Messer with pain medication. (*Id.*, PageID.146-47, ¶¶ 88-89, 91). And they administered prescribed medications incorrectly. (*Id.*, PageID.147, ¶¶ 90-93). Messer was released from the County jail on July 27, 2021. (*Id.*, PageID.148, ¶ 96).

B.  Procedural History

Messer filed this lawsuit on July 5, 2024. (ECF No. 1). He amended the complaint on August 15. (ECF No. 6). The amended complaint asserts, among other things, causes of action for deliberate indifference against all the Healthcare Defendants in violation of the Fourteenth Amendment to the United States Constitution (Counts III & VI), state law gross negligence against the individual Healthcare Defendants (Count VII), and section 1983 municipal liability, gross

---

[1] Osteomyelitis is "a serious infection that happens when bacteria or fungi infect [the] bone marrow." *Osteomyelitis*, CLEVELAND CLINIC, https://my.cleveland clinic.org/health/diseases/osteomyelitis-bone-infection (last visited Aug. 6, 2025). "It can cause permanent bone damage if it's not treated right away." *Id.*; *see also Smolinksi v. Advanced Corr. Healthcare, Inc.*, No. 23-10998, 2023 U.S. Dist. LEXIS 180006, at *13 (E.D. Mich. Oct. 5, 2023).

negligence, and ordinary negligence against Advanced Correctional Healthcare (Counts V & VIII).

The Healthcare Defendants now move to dismiss the claims asserted against them in the amended complaint on timeliness grounds. (ECF No. 18).

III. <u>Legal Standards</u>

When reviewing a motion to dismiss the complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

A plaintiff does not typically need to plead that his causes of action are timely to state a plausible claim for relief. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim"); *Jones v. Bock*, 549 U.S. 199, 216 (2007). That is because the statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). So it is usually inappropriate to dismiss a claim under Rule 12(b)(6) because of untimeliness. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

4

Nonetheless, Rule 12(b)(6) dismissal is proper when the complaint's allegations affirmatively show that a claim is time-barred. *See Jones*, 549 U.S. at 215.

IV. <u>Analysis</u>

    A. *The Fourteenth Amendment Deliberate Indifference Claim is Timely*

The Healthcare Defendants argue that the Fourteenth Amendment deliberate indifference claim is untimely because (1) the cause of action is actually a mislabeled state medical malpractice claim, and (2) Michigan medical malpractice actions are subject to a two-year statute of limitations. (ECF No. 18, PageID.376, ¶ 6; *id.*, PageID.392-94). *See* Mich. Comp. Laws §§ 600.5805(8), 600.5838a(2).  In their view, Messer should have commenced this action no later than July 27, 2023 – two years after his release from custody on July 27, 2021. (*Id.*, PageID.378, ¶ 12; *see also id.*, PageID.394).  The Court rejects this contention because Messer states a plausible claim for relief under the Fourteenth Amendment.

Messer was a pretrial detainee at the time of his incarceration at the Livingston County jail because "a court had yet to try or punish him." *Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024).  Pretrial detainees possess a Fourteenth Amendment right not to be "depriv[ed]" of their "life" or "liberty . . . without due process of law." U.S. Const. amend. XIV, § 1.  This right, at the very least, mirrors "those afforded convicted prisoners under the Eighth Amendment." *Lawler*, 93 F.4th at 926; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998).

5

The Eighth Amendment prohibits the government from inflicting "cruel and unusual punishments" upon incarcerated individuals. U.S. Const. amend. VIII; *United States v. Campbell*, 245 F. App'x 505, 508 (6th Cir. 2007). The amendment bars prison officials from "unnecessarily and wantonly inflicting pain" on inmates by acting with "deliberate indifference" to their serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quotation omitted). Deliberate indifference may take the form of delayed medical treatment, *Id.* at 899, inadequate treatment, *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011), or the failure to provide any treatment, *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448-449 (6th Cir. 2014).

Under Sixth Circuit precedent:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted) (footnote added).

Pretrial detainees must demonstrate that jail medical staff knew of and disregarded an excessive risk to their health or safety by showing that (1) the staffer was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the staffer actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Burwell v. City of Lansing*, 7 F.4th 456, 466 (6th Cir. 2021). In plain terms, jail medical staff must recognize the potential for harm to the detainee and then fail to prevent or avert that harm.[2]

1. The Objective Prong

The objective element in a deliberate indifference claim requires a showing that the pretrial detainee faced a "substantial risk of serious harm" before suffering an injury. *Lawler*, 93 F.4th at 928; *see also Farmer*, 511 U.S. at 834. Detainees may satisfy the objective prong if they have a serious medical need or condition. *See Lawler*, 93 F.4th at 928. Objectively serious medical conditions are ones that a physician has diagnosed "as needing treatment" or ones that are so obviously serious

---

[2] Under the current standard for assessing a Fourteenth Amendment failure-to-protect claim, jail medical staff "can face liability even if they did not actually know of a risk of harm to a pretrial detainee." *Lawler*, 93 F.4th at 927. Now, "[p]retrial detainees need only prove that" jail medical staff "*recklessly disregarded* a risk so obvious that they either knew or should have known of it." *Id.* (emphasis in original). Because Messer's detention occurred in July 2021, the Court applies the deliberate indifference test – the legal standard then in place. *See id.* at 927-28; *see also Beck v. Hamblen County*, 969 F.3d 592, 601 (6th Cir. 2020).

"that even a lay person would easily recognize the necessity for a doctor's attention." *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (citation omitted).

Messer plausibly alleges that he exhibited an "obvious need for medical care." *Blackmore*, 390 F.3d at 900. The amended complaint states, in relevant part, that:

- A Livingston County deputy sheriff transported Messer to the County jail at 10:36 p.m. on July 12, 2021. (ECF No. 6, PageID.141, ¶ 54).

- The jail's intake notes indicate that Messer reported that he suffers from diabetes and that his foot was injured. (*Id.*, ¶ 55).

- Messer had an open wound on his foot that was "obviously infected, odorous, turning colors, and oozing." (*Id.*, PageID.143, ¶¶ 64-67).

- A jail nurse packed and bandaged the wound but did not provide Messer with antibiotics or pain medication. (*Id.*, PageID.143-44, ¶¶ 63, 75).

- On July 13, Messer was transported to the jail's medical clinic where he received an insulin injection. Jail nursing staff "ignored his plea for necessary medical care of his foot." (*Id.*, PageID.143, ¶ 68).

- Jail nurses observed Messer's condition worsen over the next three days. They saw that he was "in pain, had pus leaking from his wounded foot, and was pleading for emergency medical attention." (*Id.*, PageID.144, ¶ 72).

- During this time, Dr. Parker "intentionally" refused to evaluate Messer's wound, direct his medical care, or send him to the hospital for emergency treatment. (*Id.*, PageID.144, ¶ 73; *see also id.*, PageID.144-45, ¶¶ 71, 74-76).

8

- Dr. Parker first visited Messer and evaluated his foot on July 16 – four days into his incarceration at the Livingston County jail. (*Id.*, PageID.145, ¶ 81).

- Dr. Parker ordered Messer to be transported to a hospital for emergency treatment because of the severity of his wound. (*Id.*).

- Hospital physicians eventually diagnosed Messer with osteomyelitis of the foot. (*Id.*, PageID.146, ¶¶ 82-84).

- His wound was so severe that hospital physicians amputated all the remaining toes on his left foot. (*Id.*, ¶ 87).

- Upon discharge from the hospital and his return to the County jail, nursing staff never provided Messer with pain medication. (*Id.*, PageID.146-47, ¶¶ 88-89, 91). They also administered prescribed medications incorrectly, resulting in "severe physical and emotional distress." (*Id.*, PageID.147-48, ¶¶ 90-93, 96).

Taken together, Messer's allegations that he suffered from a severely infected foot wound that warranted emergency admission to the hospital and the amputation of the remaining toes on his left foot, all plausibly demonstrate that he was experiencing an objectively serious medical episode. *See Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (holding that an inmate's physical pain and mental anguish associated with the denial of adequate wound care and pain management constituted a serious medical need); *see also Smolinksi v. Advanced Corr. Healthcare, Inc.*, No. 23-10998, 2023 U.S. Dist. LEXIS 180006, at *11-13 (E.D. Mich. Oct. 5, 2023) (holding that a wound that "worsened to the point of

9

swelling, splitting open, and discharging yellow fluids," and where "osteomyelitis was suspected," posed a serious medical condition).

### 2. The Subjective Prong

Courts "must address the subjective component" for each jail official "individually." *Burwell*, 7 F.4th at 466; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). Although the amended complaint does not parse out thoroughly how each individual Healthcare Defendant knew of and disregarded an excessive risk to Messer's health, there are sufficient factual allegations plausibly showing that Dr. Parker and the jail nurses knew about the severity of Messer's infected foot wound and (aside from packing it) failed to treat it or manage the attendant pain. The amended complaint, therefore, adequately establishes that the individual Healthcare Defendants exhibited deliberate indifference to Messer's serious medical condition.

Because Messer states a plausible claim for relief under the Fourteenth Amendment his allegations cannot be construed as a disguised state medical practice claim. As a result, this cause of action is not subject to the two-year limitations period for Michigan medical malpractice claims but rather the three-year statute of

limitations for 42 U.S.C. § 1983 claims.[3] *See Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020); Mich. Comp. Laws § 600.5805(2).

    B.    *The Gross Negligence Claims are Timely*

The Healthcare Defendants resort to the same playbook to dismiss the gross negligence claims. They maintain that these causes of action are untimely because they are actually medical malpractice claims, which carry a two-year statute of limitations, as opposed to gross negligence claims, which are subject to a three-year limitations period. (ECF No. 18, PageID.378, ¶¶ 12-14; PageID.392-94). *Compare* Mich. Comp. Laws §§ 600.5805(8), 600.5838a(2) *with* Mich. Comp. Laws § 600.5805(2).

Michigan law governs whether a cause of action is grounded in ordinary or gross negligence rather than medical malpractice. *See Jones v. Corr. Med. Servs.*, 845 F. Supp. 2d 824, 845 (W.D. Mich. 2012) ("Whether a claim sounds under state-law gross negligence or state-law medical malpractice is clearly a substantive issue to which Michigan law applies.").

---

[3] Insofar as the Healthcare Defendants argue that the municipal liability claim asserted against Advanced Correctional Healthcare (Count V) is untimely, this same analysis demonstrates otherwise. (ECF No. 18, PageID.374, 376, ¶¶ 1, 6-7). *See El v. City of Livonia*, No. 17-13190, 2018 U.S. Dist. LEXIS 146027, at *9 (E.D. Mich. Aug. 28, 2018) (stating that a section 1983 municipal liability claim is likewise "subject to Michigan's three year statute of limitations.").

Two elements distinguish medical malpractice from negligence-based causes of action. *First*, the alleged wrongful conduct must have "occurred within the course of a professional relationship." *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 45 (1999). That means a "licensed health care professional, licensed health care facility, or the agents or employees of a licensed health care facility, were subject to a contractual duty that required that professional, that facility, or the agents or employees of that facility, to render professional health care services to the plaintiff." *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 422 (2004).

*Second*, medical malpractice claims "raise questions involving medical judgment" rather than "issues that are within the common knowledge and experience of the jury." *Dorris*, 460 Mich. at 46. Where "the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue" through expert testimony, "a medical malpractice claim is involved." *Bryant*, 471 Mich. at 423.

With respect to the first element, Messer alleges that Advanced Correctional Healthcare contracted with Livingston County to provide trained medical professionals to service the detainees housed at the County jail. (ECF No. 6, PageID.133-34, 166-67, ¶¶ 15-16, 18-20, 133). So that prong is satisfied.

The inquiry for the second element is less straightforward. "Gross negligence" is statutorily defined as "conduct so reckless as to demonstrate a

12

substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).  It must encompass conduct that is "substantially more than negligent." *Maiden v. Rozwood*, 461 Mich. 109, 122 (1999).  Michigan courts have described gross negligence as a "willful disregard of safety measures and a singular disregard for substantial risks." *Bellinger v. Kram*, 319 Mich. App. 653, 660 (2017) (quotation omitted); *see also Oliver v. Smith*, 290 Mich. App. 678, 685 (2010).

Here, Messer arrived at the County jail with an open and obvious foot wound that was discolored, oozing fluid, and emitting a foul odor. (ECF No. 6, PageID.143, ¶¶ 64-67).  His intake forms show that the jail nursing staff knew he suffered from diabetes. (*Id.*, PageID.141, ¶ 55).  A jail nurse packed and taped the wound but never provided Messer with antibiotics or pain medication. (*Id.*, PageID.143-44, ¶¶ 63, 75).  Dr. Parker refused to evaluate the wound until four days into Messer's incarceration. (*Id.*, PageID.144, ¶ 73).  And when Dr. Parker did visit Messer eventually, he directed sheriff's deputies to transport him to the hospital immediately. (*Id.*, PageID.145-46, ¶¶ 81-82).  In fact, the infection was serious enough that it penetrated the bone and led to the amputation of all the remaining toes on Messer's left foot. (*Id.*, PageID.146, ¶¶ 84, 87).

Construing these allegations in Messer's favor, the amended complaint plausibly establishes that the Healthcare Defendants exhibited conduct "so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich.

13

Comp. Laws § 691.1407(8)(a). No expert testimony is necessary for a reasonable jury to conclude that packing and taping an open, festering wound, without administering antibiotics or pain medication, and without summoning physician intervention over the course of four days, fails to meet any legitimate standard of wound care. *See Bryant*, 471 Mich. at 423; *see also Jones*, 845 F. Supp. 2d at 846 ("a claim that defendant did nothing in response to a known risk is a matter of negligence, not malpractice.").

For all these reasons, the gross negligence claim does not sound in medical malpractice. And because Messer commenced this lawsuit within the three-year limitations period for asserting a gross negligence claim, the cause of action is not time-barred. Accordingly,

IT IS ORDERED that the Healthcare Defendants' motion to dismiss the claims asserted against them in the amended complaint (ECF No. 18) is denied.


Dated: August 8, 2025    s/ Robert J. White
                         Robert J. White
                         United States District Judge